1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT

8              FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10   CHRISTOPHER IAN GUSTARD,              No. 2:17-cv-0012-EFB P

11             Plaintiff,

12      v.                                 ORDER AND FINDINGS AND
                                           RECOMMENDATIONS
13   KAMALA HARRIS, et al.,

14             Defendants.

15

16         Plaintiff is a federal prisoner proceeding without counsel in an action brought under 42

17   U.S.C. § 1983. He has filed a motion for reconsideration of the denial of his application for leave

18   to proceed in forma pauperis pursuant to 28 U.S.C. § 1915 ("IFP application").

19   I.    Request to Proceed In Forma Pauperis

20         A.    Relevant Background

21         The court's July 5, 2017, order denying plaintiff's IFP application found that he "receives

22   deposits of approximately $1200 a month." ECF No. 12 at 2. The court based this finding on the

23   certification included with plaintiff's trust account statement, which stated that the "average

24   monthly deposit[]" to his account for the past six months was $1,198. ECF No. 10 at 2.

25         In its order, the court further suggested that plaintiff made over $800 in commissary

26   purchases between January 1, 2017 and February 24, 2017 even though he stated that he had only

27   $350 in his account as of December 2016. See ECF No. 12 at 2. Additionally, the court noted

28   that plaintiff had "$100,000 in individual retirement accounts ['IRAs']" that he asserted were

                                           1

unavailable for withdrawal. *Id.* Although the court found that he could prepay the filing fee without liquidating his IRAs, it still stated that he failed to explain why the IRAs were not available for withdrawal. *Id.*

On August 9, 2017, plaintiff filed a motion for reconsideration. ECF No. 15. Therein, he asserts that the certification mistakenly stated that he receives deposits of $1200 a month when, during the past six months, the average monthly balance in his account was $200. *Id.* at 2. To support this assertion, he includes documentation from the prison counselor who signed the certification. *Id.* at 21. The counselor states that he "mis-read the application." *Id.* Furthermore, the counselor includes a "copy of [plaintiff's] deposits for the last six months." *Id.* at 15. This document indicates that, for the past six months, plaintiff's average monthly balance is approximately $220. *See id.*

Furthermore, in his motion, plaintiff asserts that the court mistakenly suggested that he made over $800 in commissary purchases from January 1, 2017 to February 24, 2017 when his purchases for this period totaled only $318.21. *Id.* at 3. He asserts that the "the court made an incorrect assumption that the [Federal Bureau of Prisons] fiscal year began on January 1, 2017" when it actually began on October 1 like the U.S. Department of the Treasury. *Id.* at 2, 11. He adds that, from October 4, 2016 to February 22, 2017, his average monthly purchases were only $168.74. *Id.* at 3.

Additionally, he asserts that the funds in his IRAs are not available for withdrawal because "the penalties involved and tax liabilities that he would be responsible for [without having] any income from employment to pay [them]." *Id.* at 12. Further, he asserts that "[a] power of attorney is in place with the institution managing his IRA," and hence, "[a]ny withdrawal would involve a rigorous process[] given his incarceration[] and would likely be a lengthy process." *Id.*

**B.      Discussion—Motion for Reconsideration**

Rule 54(b) provides that Courts may revise interlocutory orders "at any time before the entry of a judgment." Fed. R. Civ. P. 54(b); *see also Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 12 (1983) (stating that "every order short of a final decree is subject to

reopening at the discretion of the district judge"). Consonantly, the Ninth Circuit has held that "[a]s long as a district court has jurisdiction over the case, . . . it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *City of L.A., Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (citing cases). Such cause may include "new or different facts or circumstances" that could not be shown "at the time of the prior motion." *See* E.D. Cal. R. 230(j).

Here, plaintiff has shown cause for the court to vacate its prior order and grant his IFP application. The record reflects that he receives deposits of around $200 a month to his account, not $1200 as the court found in its prior order based on the counselor's inaccurate statement in the certification. Furthermore, the record reflects that he had only about $350 in his account when he filed this lawsuit. *See* ECF No. 10 at 6. Although the court noted in its prior order that plaintiff made over $800 in commissary purchases between January and February 2017, plaintiff has shown that these commissary purchases were tied to the fiscal year, which means that they occurred over several months. Furthermore, plaintiff has now adequately explained why the funds in his IRAs are not immediately available to prepay the filing fee in this action.

For all of these reasons, plaintiff's motion for reconsideration of his IFP application makes the showing required by 28 U.S.C. § 1915(a)(1) and (2) and the application is granted. Accordingly, by separate order, the court directs the agency having custody of plaintiff to collect and forward the appropriate monthly payments for the filing fee as set forth in 28 U.S.C. § 1915(b)(1) and (2).

## II.     Screening Requirement and Standards

Federal courts must engage in a preliminary screening of cases in which prisoners seek redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must identify cognizable claims or dismiss the complaint, or any portion of the complaint, if it "is frivolous, malicious, or fails to state a claim upon which relief may be granted," or if it "seeks monetary relief from a defendant who is immune from such relief." *Id.* § 1915A(b).

/////

A pro se plaintiff, like other litigants, must satisfy the pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure. Rule 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief[] in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (ellipsis and citation omitted). While the complaint must comply with the "short and plaint statement" requirements of Rule 8, its allegations must also include the specificity required by *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Thus, to avoid dismissal for failure to state a claim, a complaint must contain more than "naked assertions," "labels and conclusions," or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555, 557. In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Furthermore, a claim upon which the court can grant relief must have facial plausibility. *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. When considering whether a complaint states a claim upon which relief can be granted, the court must accept the allegations as true, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and construe the complaint in the light most favorable to the plaintiff, *see Twombly*, 550 U.S. at 555–56; *Friedman v. AARP, Inc.*, 855 F.3d 1047, 1051 (9th Cir. 2017) (citation omitted).

**III.    Screening Order**

### A.    Factual Allegations

On December 17, 2003, plaintiff was awarded an occupational license to practice landscape architecture by the Landscape Architects Technical Committee of the California Architects Board, Department of Consumer Affairs ("the Board"). ECF No. 1 at 13–14, 52.

On March 12, 2012, in the Southern District of California, plaintiff pleaded guilty to a felony charge of distribution of images of children engaged in sexually explicit conduct. *Id.* at 14, 54. He was sentenced to 120 months in prison and required to register as a sex offender. *Id.*

On December 10, 2013, plaintiff sent the Board a letter regarding the status of his license. *Id.* at 14, 63. Therein, he told the Board that he was incarcerated and asked it "to have the status of [his] license reviewed prior to [his] opting to renew." *Id.* at 63. Apparently, he was concerned that he might have to pay the renewal fee only for the Board to revoke the license due to his conviction. *See id.* at 14, 63.

Plaintiff suggests that this letter satisfied the requirements of § 5680 of the California Business and Professions Code. *See id.* at 14. Section 5680 provides that, "[t]o renew an unexpired license, the licenseholder shall, on or before the expiration date of the license, apply for renewal on a form prescribed by the [B]oard, and *pay the renewal fee* prescribed by this chapter." Cal. Bus. & Prof. Code § 5680(b) (emphasis added). However, plaintiff concedes that "he did not submit payment" with his purported application. ECF No. 1 at 14. The license expired on December 31, 2013 and was not renewed. *Id.* at 14, 52. On March 5, 2014, plaintiff apparently sent a letter to the Board that is similar in substance to his alleged December 10, 2013 letter. *See id.* at 14, 63.

Plaintiff alleges that, on August 27, 2014, he received a letter from defendant Matthew McKinney, who is an Enforcement Officer at the Board. *Id.* at 6, 15. The letter stated, *inter alia*, that the Board had received notice of his conviction and that the fee now required to renew his license was $600. *Id.* at 15. Yet plaintiff "abandoned his pursuit of the renewal of the license" due to his alleged "inability to pay" and the Board's "position claiming they did not receive [his] notice prior to the license expiring[.]" *Id.*

Defendant McCauley is Executive Officer of the Board. On May 11, 2015, McCauley brought before the Board an accusation alleging that plaintiff had been convicted of a felony and requesting the Board hold a hearing with a view to "revoking or suspending" his license. *Id.* at 52–55. To support the accusation, McCauley cited several provisions of California law, including §§ 118 and 490 of the California Business and Professions Code. *Id.* at 53–54.

/////

/////

/////

Perinently, § 118 provides:

> The . . . expiration . . . of a license issued by a board in the department . . . shall not, during any period in which it may be renewed, restored, reissued, or reinstated, deprive the board of its authority to institute or continue a disciplinary proceeding against the licensee upon any ground provided by law or to enter an order suspending or revoking the license . . . .

Cal. Bus. & Prof. Code § 118(b).

> For its part, § 490 provides:

> [A] board may suspend or revoke a license on the ground that the licensee has been convicted of a crime[] if the crime is substantially related to the qualifications, functions, or duties of the business or profession for which the license was issued.

Cal. Bus. & Prof. Code § 490(a).

On or around June 11, 2015, plaintiff "learned of the [Board] having filed legal documents against his . . . license that were sent to his former . . . address." ECF No. 1 at 15. More specifically, he alleges that McCauley and nondefendant Tuss served the accusation at his parents' house in Virginia rather than at FCI Big Spring in Texas, where he was then incarcerated. *Id.* at 14–15. Plaintiff adds that both the Board and the California Office of the Attorney General ("OAG") knew that he resided at FCI Big Spring. *Id.* at 34. Furthermore, he alleges that these legal documents were "incomplete" and required him to respond within ten days. *Id.* at 15. By "incomplete," he apparently means that the accusation "was missing pages." *Id.* at 29.

On or about June 22, 2015, plaintiff allegedly "filed legal papers" with the Board and McCauley "requesting an order to correct service." *Id.* at 16, 29. Thereafter, the Board notified him that the hearing could be postponed for good cause. *Id.* at 16. The Board further notified him that, if he had good cause, he had to send notice to the following address within ten days: 1515 Clay Street, Suite 206, Oakland, California 94612. *Id.* This is the address of the Office of Administrative Hearings ("OAH"), Oakland Division. *See id.* at 16–17.

On June 24, 2015, the OAG attempted to correct service. *Id.* at 29. Plaintiff rejected service. *Id.*

On June 29, 2015, the OAH sent plaintiff a letter stating that that no case was pending before the OAH with his information and that, therefore, the OAH was returning his information *Id.* at 64.

In October 2015, plaintiff received noticed of a hearing. *Id.* at 16. He was awarded a continuance based on having been granted a transfer from FCI Big Spring to FCI Fort Dix in New Jersey. *See id.* The hearing was continued until March 24, 2016. *Id.*

In February 2016, plaintiff filed a motion to dismiss the administrative proceedings, alleging that he had yet to receive a complete accusation. *Id.* The Board denied that motion and plaintiff moved for reconsideration. *Id.* But, allegedly, his motion for reconsideration "was later returned to him undeliverable with the OAH address blacked out." *Id.* According to plaintiff, he "would continue to experience a pattern of the obstruction of his mail on numerous occasions." *Id.* Plaintiff does not believe that the OAH properly addressed his contention that he did not receive proper service of the accusation. *Id.* at 30.

Plaintiff alleges that, on March 23, 2016 he received documents containing, *inter alia*, a complete accusation. *Id.* at 16. Thus, he alleges that he had "less than twenty four hours notice of the [complete] [a]ccusation prior to the hearing." *Id.* at 17; *see also id.* at 14. Additionally, he alleges that the accusation was "sent from McCauley's counsel, Def. [Kamala] Harris and the [OAG]." *Id.* at 16.

Based on these allegations, plaintiff concludes that McCauley "intentionally" sent the accusation to his parents' house so that he would not have adequate time to respond. *Id.* at 15. Further, plaintiff alleges that McCauley was "attempting to adversely [a]ffect his application for licensure by comity in Virginia and . . . obstruct the administration of justice in his [] then active[] case in Henrico County Circuit Court." *Id.* at 15. Yet plaintiff acknowledges that a Virginia regulatory agency gave him "a conditional license to practice landscape architecture in Virginia in advance of his release from incarceration." *Id.* at 16 n.11; *see also id.* at 17.

On March 24, 2016, a hearing was conducted before an administrative law judge ("ALJ"). *Id.* at 17. McCauley was present and represented by a deputy attorney general. *Id.* Plaintiff participated by telephone. *Id.*

Plaintiff argued that service was improper but the ALJ overruled his objections. *Id.*

Plaintiff offered to have his license suspended. *Id.* McCauley rejected this offer. *Id.*
Plaintiff felt that McCauley's rejection of his offer "lacked rationality" because he recommended
the suspension of "an expired license that he had no intention of renewing." *Id.*

Plaintiff "provided testimony outlining his substantial efforts towards rehabilitation." *Id.*
at 18. He also "filed a substantial set of supporting defense documents." *Id.*

On April 22, 2016, plaintiff filed a motion with the ALJ. *Id.* at 32. "It [allegedly] was
addressed to the proper OAH Oakland address." *Id.* "[T]he same article of mail was returned to
[plaintiff] undelivered." *Id.* at 32, 65. This evidence, in plaintiff's assessment, shows that mail
he was sending to the OAH was being diverted to box # 264 at a UPS Store in El Cerrito,
California. *Id.* at 32; *see also id.* at 68–70. This box, according to plaintiff, belongs to defendant
Dianna Albini, who plaintiff contends works at OAH. *Id.* at 32.

Based on these alleged irregularities, plaintiff contends that "the OAH is dumping
undesired . . . mail and obstructing filings . . . from cases involving . . . prisoners." *Id.* at 33.
Likewise, he alleges that "OAH Oakland . . . staff[] . . . conspired to interfere with the
administration of justice in [his] licensing case, . . . and that . . . [Defendant Zackery] Morazzini
. . . is responsible for answering to the allegations of criminal misconduct against his . . . staff and
why he failed to act . . . to notice given by [plaintiff] regarding such allegations." *Id.*

On May 5, 2016, the ALJ issued her decision. *Id.* at 17. According to plaintiff, the
"decision devoted many references to factors other than the actual 'commission of the crime' and
recommended revocation of the license." *Id.* He further alleges that "[s]uch contributing factors
cited as justification for the decision were [his] length of incarceration, conditions of release, and
the requirement that he register as a sex offender." *Id.* Specifically, plaintiff alleges that the ALJ
found that, after his release from prison, he would "remain on supervised release as a registered
sex offender with stringent requirements that prohibit him from being outside near children." *Id.*
Plaintiff contends that "[n]o such condition was imposed . . . in federal district court." *Id.* at 19.
However, the judgment in plaintiff's criminal case provides that he is "[n]ot to have unsupervised
contact with any child under the age of 18, unless in the presence of a supervising adult (who is

aware of [his] deviant sexual behavior and conviction), and with the prior approval of the probation officer." *Id.* at 50. Likewise, the judgment provides that plaintiff is not to "loiter within 200 yards of . . . places frequented by persons under the age of 18[] without prior approval of the probation officer." *Id.* Additionally, the judgment provides that plaintiff may "[n]ot accept or commence employment . . . without prior approval of the probation officer[.]" *Id.*

Nevertheless, in plaintiff's estimation, § 493 of the California Business and Professions Code "is clear in not providing authority to use such factors to 'fix the degree of discipline.'" *Id.* Section 493 provides:

> "[I]n a proceeding conducted by a board . . . to . . . revoke a license . . . , . . . the record of conviction of the crime shall be conclusive evidence of the fact that the conviction occurred, but . . . the board may inquire into the circumstances surrounding the commission of the crime in order to fix the degree of discipline or to determine if the conviction is substantially related to the qualifications, functions, and duties of the licensee . . . .

Cal. Bus. & Prof. Code § 493.

The Board scheduled a closed-session meeting on the ALJ's decision for June 6, 2016. ECF No. 1 at 19. Plaintiff filed an objection letter that "was delivered by certified mail to the [Board] and signed for" three days before this date. *Id.* In this letter, plaintiff argued that the ALJ erroneously concluded that his conditions of release and requirement to register as a sex offender are criminal, as opposed to civil, in nature. *Id.* (citing *Smith v. Doe*, 538 U.S. 84 (2003)). Thus, he suggests that the ALJ unlawfully failed to base her decision that his offense was substantially related to landscape architecture on the conviction per se. *See id.* In other words, he contends that "an offender's requirement to register as a sex offender cannot be used in a punitive manner in any type of civil disciplinary proceeding." *Id.* Similarly, he contends that "a criminal court's imposition of [conditions of release] . . . cannot be used during a civil licensing adjudication . . . considering the degree of discipline to fix against the licensee unless the [conditions of release] specifically address the occupation." *Id.* at 20.

The Board adopted the ALJ's opinion in a decision and order ("D&O") executed by McCauley. *Id.* On June 13, 2016, defendant McKinney, "as Enforcement Officer, carried out the

9

D&O by seizing, through revocation, [plaintiff's] . . . license." *Id.* Plaintiff alleges that "Upon this action, [McKinney] did not provide any notice to [plaintiff] about his right to appeal the decision," which plaintiff contends is a requirement under § 1094.6 of the California Code of Civil Procedure. *Id.* Section 1094.6 provides that, "[i]n making a final decision [revoking a license], the local agency shall provide notice to the party that the time within which judicial review must be sought is governed by this section." *See* Cal. Civ. Proc. Code § 1094.6(e)–(f).

Plaintiff alleges that McKinney's failure to give him the notice that § 1094.6 requires "might deprive [him] of his ability to appeal the [Board's] decision." ECF No. 1 at 37. Therefore, he sought judicial review in the Sacramento County Superior Court. *Id.* He adds that this case is pending. *Id.*

Additionally, plaintiff alleges that his conditions of release will not expire until he is sixty-five years old, i.e., his retirement age. *Id.* at 23–24. Thus, he contends that the Board's reliance on his conditions of release to revoke his license has effectively precluded him from practicing landscape architecture in California. *Id.* at 24.

Plaintiff alleges that defendant Morazzini, as Director of the OAH, "is responsible for the proper and lawful administration of legal proceedings conducted by the OAH." *Id.* at 30. Further, he alleges that the hearing "was not carried out in the manner required by state and federal law." *Id.*

The Board approved plaintiff's request for a stay of its decision for thirty days. *Id.* at 37. As a result, plaintiff had to file any petition for reconsideration by August 8, 2016. *Id.*

Plaintiff filed a petition for reconsideration with the Board. *Id.* He alleges that he delivered it on August 5, 2016. *Id.* at 24, 77.

However, on August 12, 2016, McKinney sent plaintiff a letter stating that the Board did not receive the petition until August 8, 2016, on which date the Board's D&O revoking plaintiff's license took effect. *Id.* at 78. Therefore, McKinney concluded that the Board no longer had jurisdiction to consider the petition. *Id.* As a result, plaintiff contends that McKinney's actions prevented him from exhausting administrative remedies which, in turn, may prevent him from appealing the Board's decision to revoke his license. *See id.* at 38.

10

On August 26, 2016, plaintiff filed a "motion to vacate" with McCauley. *Id.* at 39. McCauley did not respond. *Id.*

On September 6, 2016, plaintiff was contacted by the Virginia Board for Architects, Professional Engineers, Land Surveyors, Interior Designers and Landscape Architects ("VA Board"). *Id.* at 25. The VA Board informed him that it "could move against his Virginia license that [it] had just issued to him in April 2016 as a result of the actions of the [Board]." *Id.* However, the VA Board "indicated that no action would be taken" until plaintiff exhausted his "appeals" of the Board's decision. *Id.*

**B.    Plaintiff's Claims**

Plaintiff's complaint contains the following counts. Unless otherwise noted, all of the claims set forth in the counts are against defendants in their official capacities.

- Count 1 (against McCauley and McKinney): A Fourth Amendment claim alleging that the revocation of his license constituted an unlawful seizure. *Id.* at 8–9.

- Count 2 (Harris and McCauley): An equal protection claim under the Fourteenth Amendment alleging that these defendants unlawfully used his conditions of release in a punitive manner when revoking his license. *Id.* at 9.

- Count 3 (Harris and McCauley): Substantive due process and equal protection claims under the Fourteenth Amendment for pursuing the revocation, rather than the suspension, of his license. *Id.*

- Count 4 (Harris and McCauley): An as-applied procedural due process challenge to § 118(b) of the Business and Professions Code for (1) pursuing the revocation, rather than the suspension, of his license; (2) failing to give him adequate notice of the hearing; and (3) using his conditions of release against him during the hearing. *Id.* at 9–10.

- Count 5 (Harris and McCauley): A facial challenge to § 490(a) of the Business and Professions Code because it is allegedly unclear, vague, and overbroad. *See id.* at 10.

/////

11

- Count 6 (Harris, McCauley, and Morazzini): Procedural due process claim for allegedly failing to give him proper notice of the hearing. *Id.* at 11.

- Count 7 (Morazzini and Albini[1]): Procedural due process, equal protection, and § 1985 conspiracy claims for obstructing, and failing to stop the obstruction of, his mail and pleadings. *Id.*

- Count 8 (Harris and McCauley): A § 1985 conspiracy claim for knowingly sending the accusation to an address at which plaintiff did not reside. *Id.* at 11–12.

- Count 9 (McCauley): A § 1985 conspiracy claim alleging that McCauley and unnamed members of the Board conspired to violate his due process rights by: (1) knowingly executing an accusation containing misrepresentations; (2) untimely serving him with it; and (3) pursuing the revocation of his license with knowledge that it could affect his application for licensure in Virginia due to comity. *Id.* at 12.

- Count 10 (McCauley and McKinney): Procedural due process and equal protection claims for violating § 1094.6(e) of the Civil Procedure Code by failing to notify him of the time within which he had to seek judicial review of the Board's decision to revoke his license. *Id.* at 12.

- Count 11 (McCauley and McKinney): A state-law claim for violating § 1094.6(e) of the Civil Procedure Code by failing to notify him of the time within which he had to seek judicial review of the Board's decision, thus preventing him from challenging said decision under § 1094.5 of the Civil Procedure Code. *Id.* at 12–13.

- Count 12 (McCauley and McKinney): A § 1985 conspiracy claim alleging that they failed to notify him of the time within which he had to seek judicial review of the Board's decision to deprive him of his procedural due process rights to challenge said decision under § 1094.5 of the Civil Procedure Code.

---

[1] Plaintiff sued Albini in her official and individual capacities.

12

The court distills the allegations in the complaint, including in these counts, into the following causes of action: (1) Fourth Amendment; (2) equal protection; (3) procedural due process; (4) substantive due process; (5) facial and as-applied due process challenges to §§ 118 and 490(a) of the Civil Procedure Code; (6) § 1985 conspiracy; and (7) a pendent state-law claim for violating § 1094.6(e) of the Civil Procedure Code.

## C.     Prayer for Relief

In his prayer, plaintiff seeks declaratory and injunctive relief. Regarding declaratory relief, he seeks a declaration that his constitutional rights were violated for the reasons set forth in the foregoing counts. *See* ECF No. 1 at 41–45. Regarding injunctive relief, he makes only two requests. The first is for the court to stay the administrative proceeding until this case is resolved. *Id.* at 41. The second is for an order requiring the Board to provide the notice required in § 1094.6(e) to all persons whose licenses they seek to revoke. *Id.* at 43. Similarly, he seeks a declaration that the alleged failure to provide him with such notice violated state law. *See id.* at 43–44.

## D.     Legal Analysis

### 1.     Subject Matter Jurisdiction—Eleventh Amendment

"A federal court must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984). "The objection that a federal court lacks subject-matter jurisdiction . . . may be raised by . . . a court on its own initiative[] at any stage in the litigation . . . ." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006) (citation omitted).

"The Eleventh Amendment has been authoritatively construed to deprive federal courts of jurisdiction over suits by private parties against unconsenting States." *Seven Up Pete Venture v. Schweitzer*, 523 F.3d 948, 952 (9th Cir. 2008) (citing *Seminole Tribe v. Florida*, 517 U.S. 44, 54 (1996)). "This jurisdictional bar remains effective . . . where state officials, instead of the State itself, are the subjects of suit." *Id.* "Generally speaking, 'a suit [brought] against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.'" *Id.* (quoting *Will*

*v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). "If, however, the plaintiffs seek prospective injunctive relief against the state official for a violation of federal law, the Eleventh Amendment does not bar the action." *Id.* at 953 (citing *Edelman v. Jordan*, 415 U.S. 651, 664 (1974); *Ex parte Young*, 209 U.S. 123 (1908)). This exception is narrow, however, and it "does not permit judgments against state officers declaring that they violated federal law in the past[.]" *P.R. Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (citation omitted). "The State of California has not waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court, . . . and the Supreme Court has held that § 1983 was not intended to abrogate a State's Eleventh Amendment immunity[. . . .]" *Dittman v. California*, 191 F.3d 1020, 1025–26 (9th Cir. 1999) (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985); *Kentucky v. Graham*, 473 U.S. 159, 169 n.17 (1985)).

Furthermore, "a federal suit against state officials on the basis of *state law* contravenes the Eleventh Amendment when . . . the relief sought and ordered has an impact directly on the State itself." *Pennhurst*, 465 U.S. at 117 (emphasis added). "[T]his principle applies . . . to state-law claims brought into federal court under pendent jurisdiction." *Id.* at 121.

Here, plaintiff has not adequately alleged that the court has jurisdiction over his federal claims. In these claims, he sues defendants in their official capacities and seeks a judgment declaring that wholly past conduct is unconstitutional, which the Eleventh Amendment bars. *P.R. Aqueduct*, 506 U.S. at 146. Furthermore, the only allegedly prospective relief he seeks is to enjoin the administrative proceeding. He does not, for instance, seek an injunction requiring the Board to reissue his license or hold a new hearing. Nor does he seek an injunction blocking enforcement of the California statutes whose constitutionality he challenges. Furthermore, while he apparently seeks to stay the administrative proceedings before the Board, his allegations compel the conclusion that such proceedings have concluded. Therefore, except as specified later in this order, the court recommends dismissal of plaintiff's federal claims without prejudice.

Likewise, plaintiff has failed to adequately allege that the court has jurisdiction over his pendent state-law claim based on § 1094.6(e). Where, as here, the plaintiff asserts "a supplemental state law claim for an injunction against a state officer acting in his official

14

capacity," the Eleventh Amendment bars it. *Ashker v. Cal. Dep't of Corrs.*, 112 F.3d 392, 394 (9th Cir. 1997) (citing *Pennhurst*, 465 U.S. 89).

The court recommends dismissing the § 1094.6(e) claim with prejudice. As noted, plaintiff seeks an order requiring the Board to provide the notice required in §1094.6(e) to all persons whose licenses it seeks to revoke. Further, plaintiff suggests that this court could order a California court to let him appeal the Board's decision despite his failure to timely appeal it. *See* ECF No. 1 at 37. But the Eleventh Amendment bars such relief. *See Pennhurt*, 465 U.S. at 106 ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to *state law*." (emphasis added)). Furthermore, the Eleventh Amendment would bar such relief even if plaintiff asserted these claims against defendants in their individual capacities; the relief would still have "an impact directly on the State itself." *Pennhurst*, 465 U.S. at 117. That is, no measure of amendment could turn the § 1094.6(e) claim into one "'seeking money damages against the individual officer in tort.'" *Ashker*, 112 F.3d at 394 (quoting *Pennhurst*, 465 U.S. at 111 n.21). Accordingly, this claim "could not be saved by any amendment." *See Polich v. Burlington N., Inc.*, 942 F.2d 1467, 1472 (9th Cir. 1991) (citation omitted).[2]

## 2.     Discussion—Facial Plausibility

As noted, plaintiff's federal claims are not cognizable because he sued defendants in their official capacities and failed to request appropriate injunctive relief. Furthermore, as discussed below, his federal claims would not have been cognizable even had he sued defendants in their individual capacities. To state a claim under § 1983, plaintiff's factual allegations must support a plausible inference "that each Government-official defendant, through the official's own *individual* actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676, 678 (emphasis added). Plaintiff has not met this standard.

/////

/////

---

[2] The dismissal of plaintiff's pendent state-law claim does not imply that he could not try to raise it in state court.

### a.  **Fourth Amendment**

The Fourth Amendment provides that the "[t]he right of the people to be secure in their . . . effects[] against unreasonable searches and seizures[] shall not be violated . . . ." U.S. CONST. amend. IV. "The basic purpose of this Amendment . . . is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Camara v. Mun. Ct.*, 387 U.S. 523, 528 (1967).

The threshold question is whether the government has conducted a "search" or "seizure" under the Fourth Amendment. This question frequently "depends on whether the person invoking its protection can claim a . . . a reasonable . . . expectation of privacy that has been invaded by government action." *Smith v. Maryland*, 442 U.S. 735, 740 (1979) (citing cases). Furthermore, the Fourth Amendment has been "understood to embody a particular concern for government trespass upon the areas ('persons, houses, papers, and effects') it enumerates." *United States v. Jones*, 565 U.S. 400, 406 (2012); *see also id.* at 409 ("the [] reasonable-expectation-of-privacy test has been added to, not substituted for, the common-law trespassory test"). Thus, the government's physical occupation of "private property for the purpose of obtaining information" may constitute a search or seizure under the Fourth Amendment. *See id.* at 404.

Here, plaintiff has failed to state a facially plausible claim that the revocation of his license was a search or seizure in violation of the Fourth Amendment. To begin with, assuming the license is an "effect," his allegations do not support a plausible inference that its revocation constituted a "seizure" under the Fourth Amendment. Plaintiff has not adequately alleged that the revocation constituted a "government trespass" or "physical intrusion of a protected area," *cf. Jones*, 565 U.S. at 406–07, partly because his allegations compel the conclusion that the license is intangible in nature. Moreover, plaintiff has not adequately alleged that he had a reasonable expectation of privacy in the license.

In short, plaintiff's allegations are far removed from the basic purpose of the Fourth Amendment, i.e., "to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Cf. Camara*, 387 U.S. at 528. Therefore, however liberally construed, they fail to state a cognizable Fourth Amendment claim.

Therefore, this dismissal should be with prejudice.  Plaintiff has simply piggybacked his Fourth Amendment claim onto his due process claims.  Arguably, it is *conceivable* that a plaintiff could adequately allege that the state's revocation of an occupational license constitutes a "seizure" under the Fourth Amendment.  This *might* occur if the state revoked a license based on the licensee's refusal to submit to a licensing requirement that invades certain privacy interests.  *See West v. Bailey*, No. 11cv1760–MMA (POR), 2012 WL 993301, at *1, 3 (S.D. Cal. Mar. 23, 2012) (revocation of nursing license based on licensee's refusal to submit to a fingerprinting requirement and criminal background check stated cognizable Fourth Amendment claim).  However, the allegations in this case are far afield of this factual scenario.  Accordingly, this claim "could not be saved by any amendment."  *Polich*, 942 F.2d at 1472.

### b. <u>Equal Protection</u>

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."  *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).

"To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment[,] a plaintiff [usually] must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class."  *Id.* (citation omitted).

Furthermore, "an equal protection claim can in some circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but instead claims that [he] has been irrationally singled out as a so-called 'class of one.'"  *Engquist v. Or. Dep't of Agr.*, 553 U.S. 591, 601 (2008).  To prevail on a "class of one" equal protection claim, plaintiff must establish that defendants have "intentionally treated [him] differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Id.* (citation omitted).

Here, plaintiff has not stated a facially plausible equal protection claim.  For one, "sex offenders do not comprise a suspect class" for equal protection purposes.  *Litmon v. Harris*, 768

F.3d 1237, 1244 (9th Cir. 2014) (citations omitted).  Furthermore, plaintiff has not adequately alleged that defendants intentionally treated him differently from similarly situated persons.  For instance, he has not alleged that defendants did not revoke, or declined to pursue the revocation of, the licenses of other sex offenders, or even other persons with criminal convictions.

Moreover, even assuming defendants treated plaintiff differently from similarly situated persons, plaintiff has not adequately alleged that their conduct was intentional.  For instance, he has not alleged that the Board's "ordinary practice . . . rarely, if ever, include[s] [revoking licenses]" when a licensee is convicted of a crime.  *See Gerhart v. Lake County, Mont.*, 637 F.3d 1013, 1022 (9th Cir. 2011).  Nor has he alleged that defendants had "past experiences" with him that might have "influenced" their decision to revoke his license.  *See id.* at 1023.  Likewise, he has not alleged a "continuous history of harassment" by defendants, *see id.*, and the decision itself to revoke the license does not constitute harassment because the Board "had the right under [California] law to [do so]" based on a criminal conviction that substantially related to landscape architecture, *see Stogner v. Kentucky*, 638 F. Supp. 1, 4 (W.D. Ky. 1985).  In short, however liberally construed, plaintiff's allegations do not support a plausible inference that defendants "had a reason to single [him] out."  *See Gerhart*, 637 F.3d at 1023.

Accordingly, the plaintiff's equal protection claim should be dismissed.  Any claim based on membership in a protected class should be dismissed with prejudice.  By contrast, any potential "class of one" claim should be dismissed without prejudice.  Plaintiff may, but is not obligated to, amend his complaint to attempt to state a cognizable "class of one" equal protection claim.

### c.    Procedural Due Process

The Fourteenth Amendment reads that no State shall "deprive any person of life, liberty, or property, without due process of law."  U.S. CONST. amend. XIV.  "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case."  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (citation omitted).

/////

Courts "examine procedural due process questions in two steps[.]" *Id.* "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State[.]" *Id.* (citation omitted). "[T]he second examines whether the procedures attendant upon that deprivation were constitutionally sufficient[.]" *Id.* (citation omitted).

Here, plaintiff has adequately alleged that he had a liberty and/or property interest in his professional license. *See, e.g.*, *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974) ("The requirement for some kind of a hearing applies to . . . the revocation of licenses . . . ." (citation omitted)).

True, plaintiff's license had expired and was not renewed before it was revoked, which may undermine the inference that he had a liberty/property interest in the license. *Cf. Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 578 (1972) (no property interest in reemployment when employment term expired and did not renew automatically and reemployment was not guaranteed under state law). But plaintiff seems to allege that, even though the license was expired, he could have renewed it simply by paying a late fee (before, of course, the Board revoked it). Read in the context of the complaint, this allegation supports a plausible inference that California law guaranteed renewal of the expired license. Thus, plaintiff has adequately alleged a liberty/property interest in the expired license. Accordingly, the court proceeds to consider whether he has adequately alleged that the procedures attendant upon the revocation of his license comported with due process.

"The essential requirements of [procedural] due process . . . are notice and an opportunity to respond." *Loudermill*, 470 U.S. at 546. Thus, "an individual [usually must] be given an opportunity for a hearing before he is deprived of any significant property interest." *See id.* at 542. "The hearing must be at a meaningful time and in a [meaningful] manner." *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970) (citation omitted).

The exact procedures required will depend on, *inter alia*, the nature of the case, the importance of the interests at stake, and the risk of an erroneous deprivation. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *Kelly*, 397 U.S. at 263. A full evidentiary or *quasi*-judicial hearing generally constitutes a hearing held in a meaningful manner, *see Mathews*, 424 U.S. at 333, though one is not required in every case, *see id.* at 343. *See also Cafeteria and Rest.*

19

*Workers Union, Local 473, AFL-CIO v. McElroy*, 367 U.S. 886, 894–95 (1961) ("[D]ue process of law generally implies and includes . . . a [hearing] according to some settled course of judicial proceedings[.] (citation omitted)). Procedural due process requires only one hearing where, as here, the state does not deprive the plaintiff of his liberty/property interest until after a full evidentiary or *quasi*-judicial hearing. *Kelly*, 397 U.S. at 267.

A full evidentiary or *quasi*-judicial hearing may include the following attributes: (1) "timely and adequate notice detailing the reasons for a proposed termination," *id.* at 267–68; (2) "an effective opportunity to defend by confronting any adverse witnesses and by presenting [the plaintiff's] own arguments and evidence orally," *id.* at 268; (3) "an impartial decision maker," *id.* at 271; (4) a decision that "rest[s] solely on the legal rules and evidence adduced at the hearing[,]" *id.*; (5) "a complete record and a comprehensive opinion," *id.* at 267; and (6) the plaintiff's right to have his own counsel represent him if he chooses, *id.* at 270.

Here, plaintiff has not stated a facially plausible procedural due process claim. He has not sufficiently alleged that he failed to receive timely and adequate notice of the accusation and hearing. Although he alleges that he did not receive the accusation until March 23, 2016 (i.e., a day before the hearing), the accusation is dated May 11, 2015. *See Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998) (the court may disregard allegations contradicted by the complaint's attached exhibits). Because the hearing took place nearly a year after he received the accusation, his allegations fail to support a plausible inference that he did not have adequate time to prepare for the hearing.

Plaintiff alleges that the accusation was incomplete. However, his only supporting allegation is that the accusation was "missing pages." This vague and conclusory allegation does not support a plausible inference that the accusation was incomplete. Furthermore, the accusation dated May 11, 2015 states the "legal and factual bases" on which the Board decided to revoke the license. *Kelly*, 397 U.S. at 268; *see also* ECF No. 1 at 52–55. Thus, even if the accusation was missing pages, plaintiff has not adequately alleged that the incomplete accusation hindered his ability to contest the Board's revocation efforts. Consequently, plaintiff has not sufficiently stated facts showing that his notice failed to adequately detail the allegations against him.

Nor has he adequately alleged that the other *Kelly* factors were absent in this case. Regarding factor (2), he alleges that he orally participated in the hearing, including testifying regarding his efforts to rehabilitate himself. His allegations also compel the inference that, during the hearing, he was allowed to respond to the Board's arguments. Likewise, he alleges that he filed "a substantial set of supporting defense documents" upon the conclusion of the hearing. ECF No. 1 at 18. Therefore, his allegations do not plausibly suggest that he was denied an effective opportunity to present his case and confront any adverse witnesses.

The only other *Kelly* factor that his allegations *conceivably* implicate is (4), i.e., the guideline that the decision should rest solely on the legal rules and evidence adduced at the hearing. In this regard, plaintiff alleges that the ALJ rested her decision that the child pornography offense substantially related to landscape architecture by relying on his conditions of release. However, the conditions of release are incorporated into the judgment in plaintiff's criminal case, which was necessary and relevant evidence at the hearing. Furthermore, plaintiff's allegations indicate that the ALJ cited the relevant California authority in issuing her decision. In point of fact, plaintiff challenges the *reasoning* of her decision, which, in the context of this case, does not plausibly implicate his procedural due process rights.

Nor do plaintiff's allegations that his mail was obstructed plausibly suggest that he was deprived of a meaningful opportunity to respond to the accusation. He alleges that the Board denied a motion to dismiss based on the allegedly incomplete accusation. Yet he alleges that he argued this issue before the ALJ and that she denied the motion. Thus, his own allegations indicate that he had a fair opportunity to address this issue.

He further alleges that, due to mailing irregularities, the ALJ did not rule on an unspecified motion he submitted before she issued her decision and that the Board failed to consider a timely filed motion for reconsideration. But he has not explained how these failures deprived him of a meaningful opportunity to respond. Likewise, he fails to plausibly allege that the outcome of his case would have been different had the ALJ and the Board considered these documents. And, to reiterate, his allegations compel the conclusion that he received a full evidentiary hearing.

In a similar vein, plaintiff alleges that McKinney did not give him notice of his right to appeal the D&O as provided in § 1094.6(e)–(f) of the California Code of Civil Procedure. This omission, he suggests, is responsible for his apparent failure to appeal the D&O within the time that § 1094.6(b) prescribes. *See Coachella Valley Mosquito and Vector Control Dist. v. Cal. Pub. Emp't Relations Bd.*, 112 P.3d 623, 633 (Cal. 2005) (The statute of limitations for filing an administrative mandate petition is 90 days . . . ." (citing Cal. Civ. Proc. Code § 1094.6(b)). However, procedural due process does not require "notice of state-law remedies which, like those at issue here, are established by published, generally available state statutes and case law." *City of West Covina v. Perkins*, 525 U.S. 234, 241 (1999). Accordingly, this argument fails.

For these reasons, plaintiff has not stated a cognizable procedural due process claim. This dismissal should be without prejudice. While the claim appears to be futile, it is *conceivable* that plaintiff could plead facts supporting a plausible inference that he failed to receive a complete accusation and that this failure deprived him of a fair opportunity to defend himself at the hearing. Hence, plaintiff may, but is not obligated to, amend his complaint to attempt to state a cognizable procedural due process claim.

### d. Substantive Due Process

Plaintiff has not clearly identified the factual basis of his substantive due process claim. Therefore, below, the court considers all the potential bases of this claim. For the reasons discussed below, the court cannot agree.

### i. Rational Relationship to a Legitimate State Interest

Reading his complaint broadly, plaintiff alleges that §§ 118(b) and 490(a) of the Civil Procedure Code lack a rational relationship to a legitimate state interest.

The § 118(b) claim should be dismissed outright. This statute merely provides that the expiration of a license does not preclude the Board from pursuing a disciplinary proceeding against a licensee or the revocation of the license. *See* Cal. Bus. & Prof. Code § 118(b). Plaintiff has not adequately alleged how § 118(b) lacks a rational relationship to a legitimate state interest or otherwise violated his federal rights. Furthermore, § 118(b) is an ancillary statute that involves a minor procedural issue that is not meaningfully related to plaintiff's core allegations, i.e., that

22

the Board (1) erroneously concluded that his child pornography offense substantially related to landscape architecture and (2) denied him procedural due process. Accordingly, because it is plainly baseless, the plaintiff's substantive due process challenge to § 118(b) should be dismissed with prejudice.

The next issue is whether plaintiff has stated a facially plausible claim that § 490(a) lacks a rational relationship to a legitimate state interest. Section 490(a) provides that the Board may "revoke a license on the ground that the licensee has been convicted of a crime[] if the crime is substantially related to the qualifications, functions, or duties of the business or profession for which the license was issued." Cal. Bus. & Prof. Code § 490(a).

"To withstand Fourteenth Amendment scrutiny, a statute is required to bear only a rational relationship to a legitimate state interest, unless it makes a suspect classification or implicates a fundamental right." *Nat'l Ass'n for Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000) (citations omitted). "[P]ersons convicted of crimes are not a suspect class." *United States v. Whitlock*, 639 F.3d 935, 941 (9th Cir. 2011) (citation omitted); *see also Skinner v. Oklahoma ex rel. Williamson*, 316 U.S. 535, 540 (1942) ("[A] State is not constrained . . . to ignore experience which marks a class of offenders or a family of offenses for special treatment."). Furthermore, while there is "some generalized due process right to choose one's field of private employment," *Connecticut v. Gabbert*, 526 U.S. 286, 291–92 (1999), the Supreme Court "has never held that the 'right' to pursue a profession is a fundamental right . . . subject to strict scrutiny," *Dittman v. California*, 191 F.3d 1020, 1031 n.5 (9th Cir. 1999).

Therefore, "[b]ecause . . . the licensing scheme neither utilizes a suspect classification nor implicates a fundamental right, [the court] now examine[s] whether it is 'rationally related to a legitimate state interest.'" *Nat'l Ass'n*, 228 F.3d at 1050 (quoting *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976)). "Governmental action is rationally related to a legitimate goal unless the action is clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Sylvia Landfield Trust v. City of Los Angeles*, 729 F.3d 1189, 1193 (9th Cir. 2013) (citation omitted).

/////

"In applying the rational basis test, [courts must] presume the constitutionality of the classification." *Nat'l Ass'n*, 228 F.3d at 1050. Thus, courts "do not require that the government's action actually advance its stated purposes, but merely look to see whether the government could have had a legitimate reason for acting as it did." *Dittman*, 191 F.3d at 1031 (citation omitted). "In other words, [courts] need to determine only whether the legislation has a conceivable basis on which it might survive constitutional scrutiny." *Id.* (citation omitted). Plaintiff bears the burden of showing that § 490(a) lacks a rational basis. *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993).

Here, plaintiff has not adequately alleged that § 490(a) lacks a rational relationship to a legitimate state interest. Regarding legitimacy, the statute seeks to protect California consumers. The California State Legislature ("Legislature") has declared that "licensees who have been convicted of crimes" pose a "potential harm to the consumers of California" and that, consequently, it may be appropriate for the Board to "impose discipline upon a licensee[.]" *See* Cal. Bus. & Prof. Code § 490(d). Likewise, the Legislature has declared that "[p]rotection of the public shall be the highest priority for the [Board] in exercising its licensing, regulatory, and disciplinary functions." Cal. Bus. & Prof. Code § 5620.1. Thus, § 490(a) seeks to promote the legitimate interest of "public . . . safety." *Sylvia Landfield*, 729 F.3d at 1193; *see also Barsky v. Bd. of Regents of Univ. of N.Y.*, 347 U.S. 442, 452 (1954) (stating that states have a "legitimate concern in professional standards").

The question, then, is whether plaintiff has adequately alleged that § 490(a) lacks a rational relationship to consumer and public safety. He has not. The statute provides that the Board may revoke a license when the licensee has been convicted of a crime that is "substantially related to the qualifications, functions, or duties of the business or profession for which the license was issued." Cal. Bus. & Prof. Code § 490(a). Far from "clearly arbitrary and unreasonable," *Sylvia Landfield*, 729 F.3d at 1193, this provision "bar[s] a person from practicing a lawful profession only for reasons related to his fitness or competence to practice that profession," *Arneson v. Fox*, 621 P.2d 817, 821 (Cal. 1980). *See also Schware v. Bd. of Bar Exam. of State of N.M.*, 353 U.S. 232, 239 (1957) (a state may invoke standards of qualification to

24

revoke a professional license if the standard has "a rational connection with the applicant's fitness or capacity to practice law"); *Dittman*, 191 F.3d at 1030 ("[R]egulations on entry into a profession . . . are constitutional if they have a rational connection with the applicant's fitness or capacity to practice the profession." (brackets in original) (citation omitted)). Thus, it is "conceivable" that § 490(a) is rationally related to the purposes of consumer and public safety. *See id.* 1031. Several cases support this conclusion.[3]

### ii.    Other Factual Bases

As noted, plaintiff appears to base his substantive due process claim on more than one theory. Therefore, the court will consider the other conceivable grounds on which he bases this claim.

Plaintiff also seems to base his substantive due process claim on the same allegations on which he bases his procedural due process claim. To the extent he does, his claim must be treated as a procedural due process claim. *See Connecticut v. Gabbert*, 526 U.S. 286, 293 (1999) ("[W]here another provision of the Constitution 'provides an explicit textual source of constitutional protection,' a court must assess a plaintiff's claims under that explicit provision and 'not the more generalized notion of "substantive due process."'" (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989))).

Additionally, construing his allegations liberally, plaintiff suggests that the Board's decision to revoke his license was so egregious that it violated substantive due process. This claim, likewise, is not cognizable.

---

[3] *See, e.g.*, *De Veau v. Braisted*, 363 U.S. 144, 159 (1960) (plurality opinion) ("State [laws] disqualifying convicted felons from certain employments important to the public interest . . . have a long history." (citation omitted)); *Barsky*, 347 U.S. at 452 (state procedure "making the conviction of any crime a violation of its professional . . . standards, and then leaving it to a qualified board . . . to determine . . . the measure of discipline to be applied to the offending [professional,]" satisfied substantive due process); *Hawker v. New York*, 170 U.S. 189, 190–91, 197, 200 (1898) (upholding statute that prohibited felons from practicing medicine, even if felony occurred before physician started practicing); *Bhalerao v. Ill. Dep't of Fin. and Prof'l Regs.*, 834 F. Supp. 2d 775, 784 (N.D. Ill. 2011) ("For more than a century, courts consistently have upheld statutes that withhold or revoke occupational licenses for failure to meet or comply with conditions imposed by the state for societal protection. Furthermore, courts have upheld statutes that require or allow revocation of professional licenses after a licensee has been convicted of a crime." (collecting cases)).

"Under the Fourteenth Amendment's substantive due process prong, [the Ninth Circuit uses] the 'shocks the conscience' test [in appropriate cases]." *See Fontana v. Haskin*, 262 F.3d 871, 882 n.7 (9th Cir. 2001) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). Under this test, "[t]he threshold question is 'whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Id.* (quoting *Lewis*, 523 U.S. at 848 n.8).

Here, plaintiff has not adequately alleged that defendants' conduct in seeking to revoke his license was so egregious as to shock the conscience. Plaintiff seems to base this conceivable claim on the notion that defendants revoked his license based on an erroneous determination that his child pornography offense substantially related to his profession. But the contention that the state has "suspended [professional] privileges" based on "unproven allegations" does not suffice to state a substantive due process claim. *See Moore v. Williamsburg Reg'l Hosp.*, 560 F.3d 166, 180 (4th Cir. 2009). In short, however liberally read, plaintiff's allegations do not support a plausible inference that the Board's decision was so outrageous as to shock the conscience.

For the foregoing reasons, plaintiff's substantive due process claim should be dismissed with prejudice. Courts have consistently held that statutes such as § 490(a) comport with substantive due process. Furthermore, plaintiff merely piggybacks his substantive due process claim onto his procedural due process claim. Additionally, his allegations that the Board erroneously revoked his license do not support a substantive due process claim. Consequently, any further amendment of this claim would be futile. *See Polich*, 942 F.2d at 1472.

### e. Due Process—Facial Challenge

Plaintiff also alleges a facial due process challenge to §§ 118(b) and 490(a) on the ground that these statutes are void for vagueness. This challenge fails. Plaintiff's allegations compel the inference that "First Amendment freedoms are not infringed by [these statutes]." *Chapman v. United States*, 500 U.S. 453, 467 (1991). Thus, "the vagueness claim must be evaluated as the statute *is applied to* the facts of this case." *Id.* (emphasis added) (citation omitted).[4]

---

[4] *Accord Foti v. City of Menlo Park*, 146 F.3d 629, 639 n.10 (9th Cir. 1998) ("A facial challenge is permissible when the statute in question clearly implicates free speech rights." (citing

Furthermore, plaintiff's facial due process challenge to these statutes would fail even if he could assert it. "A facial challenge to a [statute] is . . . the most difficult challenge to mount successfully[] since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United v. Salerno*, 481 U.S. 739, 745 (1987). The challenger shoulders this "heavy burden." *Id.* The Ninth Circuit has consistently applied *Salerno*'s exacting standard to facial challenges "outside the domain of the First Amendment."[5]

Here, plaintiff has not adequately alleged that there is no set of circumstances under which these statutes would be valid. As explained above, § 118(b) is an ancillary statute that involves a minor procedural issue that is not meaningfully related to his core allegations. Likewise, the notion that there is no set of circumstances under which § 490(a) would be valid is patently unsound. This would mean that the applicability of § 490(a) would be unclear no matter the severity of the crime and the closeness of its relationship with the "qualifications, functions, or duties of the business or profession for which the license was issued." Cal. Bus. & Prof. Code § 490(a). Such reasoning, for instance, would preclude the Board from revoking the license of a landscape architect convicted for criminal negligence in the faulty construction of buildings in a public park, or for using his architecture business to launder money for a vast drug ring. In short,

---

cases)); *United States v. Johnson*, 130 F.3d 1352, 1354 (9th Cir. 1997) ("Unless First Amendment freedoms are implicated, a vagueness challenge . . . must show that the law is vague as applied to the facts of the case at hand." (citations omitted)); *United States v. Marquardt*, 949 F.2d 283, 286 n.2 (9th Cir. 1991) (per curiam) ("Outside the first amendment context, a party may challenge a government measure only if it is vague as applied to the particular conduct at issue." (citation omitted)); *United States v. Fitzgerald*, 882 F.2d 397, 398 (9th Cir. 1989) ("[B]ecause this action does not involve first amendment rights, this court need only examine the vagueness challenge under the facts of the particular case and decide whether, under a reasonable construction of the statute, the conduct in question is prohibited." (citation omitted)).

[5] *Hotel & Motel Ass'n of Oakland v. City of Oakland*, 344 F.3d 959, 972 (9th Cir. 2003) (citation omitted); *accord Puente Ariz. v. Arpaio*, 821 F.3d 1098, 1104 (9th Cir. 2016) ("Without more direction, we have chosen to continue applying *Salerno*.") (citations omitted)); *Sprint Telephony PCS, L.P. v. County of San Diego*, 543 F.3d 571, 579 n.3 (9th Cir. 2008) (en banc); *S.D. Myers, Inc. v. City and County of San Francisco*, 253 F.3d 461, 467 (9th Cir. 2001) ("[W]e will not reject *Salerno* . . . until a majority of the Supreme Court clearly directs us to do so."); *El Rescate Legal Servs., Inc. v. Exec. Office of Immigration Review*, 959 F.2d 742, 750–51 (9th Cir. 1991) (en banc).

there is no indication that § 490(a) is "unconstitutional in *all* of its applications." *Wash. State Grange v. Wash. State Repub. Party*, 552 U.S. 442, 449 (2008) (emphasis added) (citation omitted).

Accordingly, plaintiff's facial due process challenge to §§ 118(b) and 490(a) should be dismissed. This dismissal should be with prejudice because the claim "could not be saved by any amendment." *See Polich*, 942 F.2d at 1472.

### f.     Due Process—As Applied[6]

The void-for-vagueness "doctrine is an aspect of due process and requires that the meaning of a . . . statute be determinable." *Schwartzmiller v. Gardner*, 752 F.2d 1341, 1345 (9th Cir. 1984). "A statute is void for vagueness if it fails to give adequate notice to people of ordinary intelligence concerning the conduct it proscribes, or if it invites arbitrary . . . enforcement[.]" *Id.* (citing cases); *see also Johnson v. United States*, 135 S. Ct. 2551, 2556 (2015) ("[T]he Government violates [due process] by taking away someone's . . . liberty[] or property under a . . . law . . . so standardless that it invites arbitrary enforcement." (citation omitted)). The court focuses on the second question—whether § 490(a) invites arbitrary enforcement—because § 490(a) does not proscribe conduct. *See* Cal. Bus. & Prof. Code § 490(a); *see also Smith v. Goguen*, 415 U.S. 566, 574 (1974) (stating that the second question is "the most meaningful aspect of the vagueness doctrine" in many cases).

Generally, a statute invites arbitrary enforcement if it fails to "establish minimal guidelines to govern [its] enforcement." *See Gonzales v. Carhart*, 550 U.S. 124, 150 (2007) (citing *Goguen*, 415 U.S. at 574). In such a case, the statute may "vest[] virtually complete discretion in the hands of [state officials] to determine whether the . . . statute [is satisfied]." *See Kolender v. Lawson*, 461 U.S. 352, 358 (1983). "Such a standardless sweep allows [state officials] to pursue their personal predilections." *Goguen*, 415 U.S. at 575. However, a statute

/////

---

[6] Plaintiff asserts as-applied due process challenges to §§ 118(b) and 490(a). The as-applied due process challenge to § 118(b) should be dismissed outright. To reiterate, § 118(b) is an ancillary statute that involves a minor procedural issue that is not meaningfully related to his relevant allegations.

that contains standards "[that] narrow [its] scope . . . and limit [state officials' discretion]" generally fails to invite arbitrary enforcement. *See Gonzales*, 550 U.S. at 150.

The question whether a statute establishes minimal guidelines to govern its enforcement begins with "the [text] of the [statute] itself[.]" *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972) (citation omitted). When interpreting statutory texts for vagueness, "courts use the ordinary meaning of terms unless context requires a different result." *Gonzales*, 550 U.S. at 152 (citation omitted). Thus, "otherwise imprecise terms may avoid vagueness problems when used in combination with terms that provide sufficient clarity, and vagueness challenges will be rejected when it is clear what the [statute] as a whole prohibits[.]" *Human Life of Wash. Inc. v. Brumsickle*, 624 F.3d 990, 1021 (9th Cir. 2010) (citations omitted). Moreover, courts consider any "narrowing definitions" when determining whether a statute is impermissibly vague. *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 21 (2010). When the plaintiff raises an as-applied due process challenge, the court need decide only whether "a *reasonable* construction of the statute" would authorize the challenged action. *See Fitzgerald*, 882 F.2d at 398 (emphasis added); *accord United States v. Agront*, 773 F.3d 192, 195 (9th Cir. 2014).

"These standards should not . . . be mechanically applied." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982). "The degree of vagueness that the Constitution tolerates . . . depends in part on the nature of the enactment." *Id.* "The [Supreme] Court has also expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe." *Id.* at 498–99.

Under California law, the Board must "develop criteria to aid it, when considering the . . . revocation of a license, to determine whether a crime or act is substantially related to the qualifications, functions, or duties of the business or profession it regulates." Cal. Bus. & Prof. Code § 481; *see also Fox*, 621 P.2d at 822 ("[T]he [California] Legislature has recently required administrative boards to develop written 'criteria' to assist in determining whether the requisite special relationship exists to permit discipline." (citing Cal. Bus. & Prof. Code §§ 481–82)). Title 16 of the California Code of Regulations provides that, "[f]or the purpose of . . . revocation of the license of a landscape architect pursuant to [§ 490(a)], a crime . . . shall be considered

substantially related to the qualifications, functions, and duties of a landscape architect if to a

substantial degree it evidences present or potential unfitness of a landscape architect to perform

the functions authorized by his or her license in a manner consistent with the public health, safety,

or welfare."  Cal. Code. Regs. tit. 16, § 2655.  These regulations further provide:

> (b) When considering the suspension or revocation of the license of a landscape architect on the grounds that the person licensed has been convicted of a crime, the Board, in evaluating the rehabilitation of such person and his or her present eligibility for a license will consider the following criteria:
>
> > (1)     Nature and severity of the act(s) or offense(s).
> >
> > (2)     Total criminal record.
> >
> > (3)     The time that has elapsed since commission of the act(s) or offense(s).
> >
> > (4)     Whether the licensee has complied with any terms of parole, probation, restitution or any other sanctions lawfully imposed against the licensee.
> >
> > (5)     If applicable, evidence of expungement proceedings . . . .
> >
> > (6)     Evidence, if any, of rehabilitation submitted by the licensee.

*Id.* § 2656(b).

Here, plaintiff has not adequately alleged facts to demonstrate that § 490(a) is so

standardless that it gave the Board complete discretion to enforce it.  As noted, this statute

provides that the Board may revoke a licensee's license if he has a criminal conviction that is

substantially related to the qualifications, functions, or duties of the business or profession for

which the Board issued it.  Liberally construing plaintiff's complaint, he seems to allege that

§ 490(a) gave the Board unfettered discretion to determine if his child pornography offense was

substantially related to his practice as a landscape architect.  But California law does not support

such a vague reading of § 490(a).

Rather, California regulations further define § 490(a) to mean that a crime is

"substantially related to the qualifications, functions, and duties of a landscape architect if to a

substantial degree it evidences present or potential unfitness of a landscape architect to perform the functions authorized by his . . . license in a manner consistent with the public health, safety, or welfare." Cal. Code. Regs. tit. 16, § 2655. This "narrowing definition" is clearer than the allegedly vague language of § 490(a). *Cf. Holder*, 561 U.S. at 21. And, consistent with the California Supreme Court's interpretation of § 490(a), this narrowing definition provides that the Board can revoke a landscape architect's license "only for reasons related to his fitness or competence to practice that profession." *See Fox*, 621 P.2d at 821; *cf. Wainwright v. Stone*, 414 U.S. 21, 22–23 (1973) (per curiam) ("For the purpose of determining whether a state statute is too vague and indefinite to constitute valid legislation we must take the statute as though it read precisely as the highest court of the State has interpreted it." (citation omitted)). Moreover, the regulations implementing § 490(a) set forth reasonably specific "criteria" for the Board to follow "[w]hen considering the . . . revocation of the license of a landscape architect on the grounds that the person licensed has been convicted of a crime[.]" Cal. Code. Regs. tit. 16, § 2656(b). These "relatively clear guidelines" and "objective criteria" further limit the Board's discretion in interpreting § 490(a). *See Gonzales*, 550 U.S. at 149. In short, § 490(a) did not give the Board unfettered discretion to enforce it.

Nor has plaintiff adequately alleged that the Board arbitrarily sought to revoke his license. Plaintiff alleges that the ALJ improperly relied on various considerations in concluding that his child pornography offense was substantially related to his landscape architecture practice. To wit, he alleges that her "decision devoted many references to factors other than the actual 'commission of the crime.'" ECF No. 1 at 17. He further alleges that "factors cited as justification for the decision were [his] length of incarceration, conditions of release, and the requirement that he register as a sex offender." *Id.* Additionally, he alleges that the ALJ found that, after his release from prison, he would "remain on supervised release as a registered sex offender with stringent requirements that prohibit him from being outside near children." *Id.* Yet he alleges that "[n]o such condition was imposed . . . in federal district court." *Id.* at 19.

These allegations actually undermine the inference that the Board arbitrarily construed § 490(a) to apply to his case. Contrary to plaintiff's somewhat unclear contention, California law

did not limit the Board to consider only "the commission of the crime" when determining whether his child pornography offense substantially related to landscape architecture. Rather, under California law, "the record of conviction of the crime is conclusive evidence of the fact that the conviction occurred, but only of that fact, and the [B]oard may inquire into the circumstances surrounding the commission of the crime . . . to determine if the conviction is substantially related to the qualifications, functions, and duties of the licensee." Cal. Bus. & Prof. Code § 493; *see also* Cal. Code. Regs. tit. 16, § 2656(b) (setting forth criteria for the Board to consider when applying § 490(a)). Thus, plaintiff's allegation that the ALJ—whose decision the Board adopted—considered his conditions of release and other factors actually supports the inference that the Board followed the statutory and regulatory guidelines as opposed to any personal predilections. Similarly, plaintiff alleges that the ALJ improperly considered his conditions of release, including his requirement to register as a sex offender, because they are civil, not criminal, in nature. But California law would seem to require the ALJ to consider such "circumstances," Cal. Bus. & Prof. Code § 493, because they may bear on the "present or potential unfitness of a landscape architect to perform the functions authorized by his or her license in a manner consistent with the public health, safety, or welfare," Cal. Code. Regs. tit. 16, § 2655. Moreover, it bears emphasis that the judgment in plaintiff's criminal case incorporated the conditions whose applicability he disputes.[7]

Plaintiff also takes umbrage with the ALJ's alleged finding that, after his release from prison, he would "remain on supervised release as a registered sex offender with stringent requirements that prohibit him from being outside near children." ECF No. 1 at 17. He alleges that "[n]o such condition was imposed . . . in federal district court." *Id.* at 19. However, as noted earlier, the judgment in plaintiff's criminal case provides that he is "[n]ot to have unsupervised contact with any child under the age of 18, unless in the presence of a supervising adult . . . and with the prior approval of the probation officer." *Id.* at 50. Likewise, the judgment provides that

---

[7] Plaintiff cites *Doe*, 538 U.S. 84, for the proposition that the requirement to register as a sex offender is civil, not criminal, in nature. But the issue in *Doe* was whether a sex offender registry with community notification violated the *Ex Post Facto* Clause. *Id.* at 89. Hence, *Doe* is inapposite.

he is not to "loiter within 200 yards of . . . places frequented by persons under the age of 18[] without prior approval of the probation officer." *Id.* Additionally, the judgment provides that plaintiff may "[n]ot accept or commence employment . . . without prior approval of the probation officer[.]" *Id.* Therefore, while the district court might not have precisely prohibited plaintiff from being outside near children, his own supporting documents undercut the inference that the ALJ arbitrarily so found.

In any event, the specific issue before the court is not whether the ALJ's decision—or the D&O adopting it—was correct. Rather, it is whether the Board *reasonably* construed § 490(a) to authorize the revocation plaintiff's license. *See Fitzgerald*, 882 F.2d at 398. In making this determination, "[t]he fact that there may be plausible arguments [that plaintiff's child pornography offense did not substantially relate to landscape architecture] does not mean that [§ 490(a)] is [impermissibly] vague." *Chapman*, 500 U.S. at 467. Rather, the ultimate question is whether § 490(a) is so standardless that it invites arbitrary enforcement. *See Kolender*, 461 U.S. at 357. Judged against the standards set forth above, the alleged facts do not support a plausible inference that the Board unreasonably or arbitrarily construed § 490(a) to apply to his case.

For these reasons, the court recommends dismissing plaintiff's as-applied challenge to § 490(a). However, while this claim appears to be futile, this dismissal should be without prejudice. At this early stage, it is conceivable that plaintiff could allege additional facts sufficient to state a potentially cognizable as-applied due process claim.

### g.   **§ 1985 Conspiracy**

Plaintiff asserts a § 1985 conspiracy claim against McCauley based on allegations that he knowingly: (1) executed an accusation containing misrepresentations; (2) untimely served him with it; and (3) pursued the revocation of his license with knowledge that it could affect his application for licensure in Virginia due to comity. Further, he asserts a § 1985 conspiracy claim against McCauley and McKinney based on the allegation that they knowingly: (1) sent the accusation to an address at which he did not reside; and (2) failed to notify him of the time within which he had to seek judicial review of the Board's decision. Additionally, he asserts a § 1985 conspiracy claim against Morazzini and Albini for knowingly obstructing, and failing to stop the

33

obstruction of, his mail and pleadings. Plaintiff bases these conspiracy claims on the same allegations on which he bases his other claims.

"A plaintiff alleging a conspiracy under § 1985(3) must establish: [1] the existence of a conspiracy to deprive the plaintiff of the equal protection of the laws; [2] an act in furtherance of the conspiracy; [3] and a resulting injury." *Scott v. Ross*, 140 F.3d 1275, 1284 (9th Cir. 1998) (citation omitted). Regarding the first element, the plaintiff must establish some racial or otherwise class-based invidious discriminatory animus for the conspiracy. *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267–69 (1993). Regarding the third element, "to state a claim for conspiracy under § 1985, a plaintiff must first have a cognizable claim under § 1983." *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 930 (9th Cir. 2004) (citation omitted). Moreover, "a mere allegation of conspiracy without factual specificity is insufficient" to state a claim under § 1985. *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988).

Here, nowhere does plaintiff allege that racial or class-based invidious discriminatory animus motivated defendants' alleged conspiracy to deprive him of his constitutional rights. Furthermore, he has not stated any cognizable § 1983 claims. Additionally, his conclusory allegations of conspiracy lack the factual specificity necessary to support a § 1985 claim. Accordingly, his § 1985 claims fail to state a claim.

Furthermore, his conspiracy claims would fail if the court treated them as § 1983 conspiracy claims. "To establish liability for a conspiracy in a § 1983 case, a plaintiff must demonstrate the existence of an agreement or meeting of the minds to violate constitutional rights." *Crowe v. County of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010) (citation omitted). Furthermore, "the plaintiff must state specific facts to support the existence of the claimed conspiracy." *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989) (citation omitted). Additionally, the plaintiff must "show [that an] actual deprivation of his constitutional rights resulted from the alleged conspiracy." *Woodrum v. Woodward County, Okl.*, 866 F.2d 1121, 1126 (9th Cir. 1989) (citation omitted).

Here, plaintiff's conclusory allegations of conspiracy fail to support a plausible inference that defendants agreed to violate his constitutional rights. Likewise, his conclusory allegations

lack the factual specificity necessary to support a plausible inference of such a conspiracy. In addition, because his § 1983 claims are not cognizable, he has not adequately alleged an actual deprivation of his constitutional rights from the alleged conspiracy. Accordingly, his conspiracy claims would fail even if brought under § 1983.

Plaintiff's § 1985 conspiracy claims should be dismissed with prejudice. His complaint "lacks any indication that [he] was discriminated against because he is a member of a particular race or suspect class," *Burns*, 883 F.2d at 821 (citation omitted), and the court already concluded that any equal protection claim based on membership in a protected class should be dismissed with prejudice, *supra* Part III(D)(2)(b). However, plaintiff may, but is not obligated to, attempt to plead a § 1983 conspiracy claim in any amended complaint.

### h. <u>Defendant Harris</u>

Plaintiff's allegations are, at most, tangentially related to Harris. For instance, while he alleges that an attorney from the OAG represented McCauley at the hearing, it was not Harris. Furthermore, he alleges that the accusation was sent to his parents' house in Virginia when the OAG knew that he resided at FCI Big Spring. But McCauley executed the accusation. Therefore, plaintiff has not stated a cognizable claim against Harris. *See Iqbal*, 556 U.S. at 676, 678 (To state a claim under § 1983, plaintiff's factual allegations must support a plausible inference "that each Government-official defendant, through the official's own *individual* actions, has violated the Constitution." (emphasis added)). Consequently, the claims against Harris should be dismissed with prejudice. However, plaintiff should be given an opportunity to name a proper defendant from the OAG, if any.[8]

### i. <u>Defendant Albini</u>

Plaintiff asserted procedural due process, equal protection, and § 1985 conspiracy claims against Albini in her official and individual capacities for allegedly obstructing, and failing to stop the obstruction of, his mail and pleadings. She is the only defendant against whom plaintiff asserted individual-capacity claims. But, as shown above, plaintiff would not have stated any

---

[8] Moreover, Harris must be dismissed because she is no longer the Attorney General of California. Fed. R. Civ. P. 25(d).

cognizable claims against any of the defendants even had he sued them in their individual capacities.  In short, plaintiff's assertion of individual-capacity claims against Albini does not impact the above analysis or the court's disposition of his claims.

**IV.	Motion for Extension of Time**

Plaintiff filed this action on January 3, 2017.  On April 3, 2017, he moved for an extension of time to serve defendants.  ECF No. 11.  Therein, he noted that the 90-day period for service under Federal Rule of Civil Procedure 4(m) was set to expire even though the court had yet to rule on his IFP application.  *Id.* at 2.  Further, he asserted that the IFP application, if granted, would require the Marshal to effect service.  *Id.* at 2.  Therefore, he concluded that he had shown good cause for an extension of time to serve defendants.  *Id.*

Rule 4(m) generally provides that courts must dismiss an action without prejudice if the defendants are "not served within 90 days after the complaint is filed."  However, "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."  *Id.*  "District courts have broad discretion to extend time for service under Rule 4(m)."  *Efaw v. Williams*, 473 F.3d 1038, 1041 (9th Cir. 2007).

Here, although the court is granting plaintiff's IFP application, he has yet to state any cognizable claims such that the Marshal would be required to effect service.  Furthermore, as noted, plaintiff must be given leave to amend his complaint as to certain claims.  Therefore, the time for service must necessarily be extended and the court will therefore grant plaintiff's motion for an extension of time.  If plaintiff files an amended complaint and the court finds that service of the complaint is proper, the court will set a new deadline directing plaintiff to submit documents necessary to effect service of process.

**V.	Motion for Appointment of Counsel**

On January 27, 2017, plaintiff filed a motion for appointment of counsel.  ECF No. 7. Therein, he asserts that he is an inmate at FCI Fort Dix and that their electronic legal research database does not allow him to access California state cases.  *Id.* at 7.  It is imperative, he says, that he be able to access California cases because he is challenging the constitutionality of state statutes.  *Id.*

There is no constitutional right to appointed counsel for § 1983 claims. *Storseth v. Spellman*, 654 F.2d 1349, 1353 (9th Cir. 1981) (citation omitted). Likewise, district courts lack authority to require counsel to represent indigent prisoners in § 1983 cases. *Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 298 (1989).

However, in exceptional circumstances, the court may request an attorney to voluntarily represent such a plaintiff. *See* 28 U.S.C. § 1915(e)(1); *see also Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991). When determining whether exceptional circumstances exist, the court must consider the plaintiff's likelihood of success on the merits as well as his ability to articulate his claims pro se in light of the complexity of the legal issues involved. *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009) (citation omitted).

The burden of demonstrating exceptional circumstances is on the plaintiff. *See id.* Circumstances common to most prisoners, such as lack of legal education and limited law library access, usually do not constitute exceptional circumstances. *See Wood v. Housewright*, 900 F.2d 1332, 1335 (9th Cir. 1990).

Here, plaintiff has not shown exceptional circumstances warranting the appointment of counsel. At this early stage in the proceedings, it appears that he can articulate and pursue his claims adequately. For instance, he has successfully filed a motion for reconsideration of the court's denial of his IFP application. Furthermore, while he states that he lacks access to California cases, all the claims that the court recommends dismissing without prejudice arise under federal law. Hence, the court denies his motion for appointment of counsel without prejudice.

## VI. Summary of Order

Accordingly, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion for reconsideration (ECF No. 15) is granted, with the result that his request to proceed in forma pauperis (ECF No. 10) is granted.

2.  Plaintiff shall pay the statutory filing fee of $350. All payments shall be collected in accordance with the notice to the Federal Bureau of Prisons filed concurrently herewith.

3.    Plaintiff's motion for extension of time (ECF No. 11) is granted.

4.    Plaintiff's motion for appointment of counsel (ECF No. 7) is denied without

      prejudice.

5.    The Clerk of the Court is directed to randomly assign a United States District

      Judge to this action.

Further, IT IS HEREBY RECOMMENDED that:

1.    The following claims be dismissed with prejudice:

      a.    Plaintiff's Fourth Amendment claim;

      b.    Plaintiff's equal protection claim insofar as it is based on membership in a

            protected class;

      c.    Plaintiff's substantive due process claims;

      d.    Plaintiff's facial due process challenge to §§ 118 and 490 of the California

            Business and Professions Code;

      e.    Plaintiff's as-applied due process challenge to § 118 of the California

            Business and Professions Code;

      f.    Plaintiff's § 1985 conspiracy claims; and

      g.    Plaintiff's pendent state-law claim based on § 1094.6 of the California

            Code of Civil Procedure.

2.    Defendant Harris be dismissed from the case with prejudice.

3.    The complaint be dismissed with leave to amend within 30 days.[9] Any amended

      complaint must include copies of the ALJ's decision and the D&O adopting it.  If

      these documents are unavailable, plaintiff must explain why.  Failure to comply

      with this order may result in a recommendation that this action be dismissed for

      failure to state a claim and/or failure to prosecute.

These findings and recommendations are submitted to the United States District Judge

assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

---

[9] Plaintiff may not change the nature of this suit by alleging new, unrelated claims.
*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

38

after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties.  Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

within the specified time may waive the right to appeal the District Court's order.  *Turner v.*

*Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED:  November 30, 2017.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE