UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER GUSTARD,<br><br>　　　Plaintiff,<br><br>　v.<br><br>KAMALA HARRIS, et al.,<br><br>　　　Defendants. | No. 2:17-cv-0012-TLN-EFB P<br><br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a federal inmate proceeding without counsel in this action brought under 42 U.S.C. § 1983. Following screening, the filing of an amended complaint, and a substitution, claims against four defendants remain in the action: Morazzini, McKinney, Zuniga, and McCauley. ECF No. 34. Morazzini, McKinney, and McCauley move to dismiss the claims against them. ECF Nos. 51, 52. For the reasons that follow, Morazzini's motion should be granted. The motion filed by McKinney and McCauley should be granted in part and denied in part.

**I.　Plaintiff's Allegations**

Plaintiff had a license to practice as a landscape architect in California. ECF No. 30 at 14. During the process of renewing the license, he informed the California Architects Board's Landscape Architecture Technical Committee ("the Board" or "the LATC") that he had recently pleaded guilty to a federal felony charge of distribution of images of children engaged in sexually explicit conduct. *Id.* at 30. This notification was required by California law. *Id.* Following the

1

Board's filing of an accusation against plaintiff and a subsequent administrative hearing, the Board found that the conviction called for the revocation of plaintiff's license pursuant to California Business and Professions Code § 490(a) and California Code of Regulations, Title 16, § 2655.[1] *Id.* at 60-67. It also imposed a bill of over $7,000 in costs of enforcement on plaintiff, under California Business and Professions Code § 125.3. *Id.* At the time, defendant McCauley was the Executive Officer of the LATC. *Id.* at 8. McKinney was the LATC's "Enforcement Officer" or "Enforcement Analyst." *Id.* at 9. Morazzini was the Director of California's Office of Administrative Hearings ("OAH"), which performs administrative hearings for state agencies. *Id.* at 10. McCauley has since left the agency and been replaced with Zuniga. ECF No. 70.

Plaintiff believes that his license should not have been revoked because he disagrees with the Board's decision that his crime had a sufficient nexus with his profession to justify revocation. *Id.* at 13. He challenges that decision, and a number of other aspects of the administrative proceeding, as violative of due process. He also challenges the statutes on which the decision rested. Plaintiff's unnecessarily long and convoluted amended complaint (over 50 pages, exclusive of exhibits), alleges eleven "counts"; i.e., claims for relief. These claims fall into two categories: (1) claims that plaintiff's procedural due process rights were violated in various ways during the administrative process that ended in revocation of his license and (2) claims that

---

[1] These laws provide:

> In addition to any other action that a board is permitted to take against a licensee, a board may suspend or revoke a license on the ground that the licensee has been convicted of a crime, if the crime is substantially related to the qualifications, functions, or duties of the business or profession for which the license was issued.

Cal. Bus. & Prof. Code § 490(a).

> For the purpose of denial, suspension, or revocation of the license of a landscape architect pursuant to Division 1.5 (commencing with Section 475) of the Business and Professions Code, a crime or act shall be considered substantially related to the qualifications, functions, and duties of a landscape architect if to a substantial degree it evidences present or potential unfitness of a landscape architect to perform the functions authorized by his or her license in a manner consistent with the public health, safety, or welfare.

Cal. Code Regs. tit. 16, § 2655.

2

the statutes through which his license was revoked are unconstitutionally void, overbroad, or vague as applied to him.

### a. **Procedural Due Process Claims**

Plaintiff claims that the following actions deprived him of his procedural due process rights:

(1) McCauley (in his official capacity) and the Board wrongfully used the requirement that plaintiff register as a sex offender to determine that his crime was substantially related to the practice of landscape architecture because such use was not authorized by § 490(a) or § 2655 (Count 1);

(2) McKinney (in his individual capacity), McCauley (in his official capacity), and the Board deprived plaintiff of adequate notice of its intent to impose costs of enforcement on him, failed to provide plaintiff with an adequate opportunity to present evidence that he could not afford to pay costs, and did not provide a reasoned determination that plaintiff could pay (Counts 5, 6);

(3) McKinney (in his individual capacity), McCauley (in his official capacity), and the Board failed to provide plaintiff with notice of the time for seeking court review of the Board's decision via administrative writ petition (Count 6);

(4) McKinney (in his individual capacity) wrongly determined that plaintiff filed his motion for reconsideration too late, and McCauley (in his individual and official capacities) did not correct the error (Count 7);

(5) The Board failed to provide him with a revocation hearing within statutory deadlines (Counts 8, 9);

(6) McCauley and McKinney (in their individual capacities) and the Board imposed a renewal fee on plaintiff (prior to deciding to revoke his license) without giving notice to plaintiff and providing him with an opportunity to present evidence of his inability to pay the renewal fee (Counts 8, 9);

(7) McKinney (in his individual capacity), McCauley (in his official capacity), and/or the Board did not serve the accusation on plaintiff properly, did not provide a reasoned

3

decision in denying his motion to dismiss the accusation for improper service, and did not consider his motion for reconsideration on the service issue because it was never delivered to them (Counts 9, 10);

(8) The Board provided plaintiff with its exhibits less than 24 hours prior to the hearing (Count 9);

(9) Morazzini failed to respond to plaintiff's letter informing him that plaintiff believed that his mail to the Office of Administrative Hearings was being tampered with or obstructed (Counts 10, 11).

### b. **Void-for-Vagueness Claims**

Plaintiff challenges the following statutes as applied to him:

(1) §§ 490(a), 2655, and 2656(b)(1) [2] for failing to define sexual conduct that is substantially related to the practice of landscape architecture, for failing to define "loitering," for failing to provide notice to the plaintiff the that Board may consider sex offender registration in making its revocation decision, and for allowing the Board to consider the egregious nature of his crime rather than his efforts at rehabilitation in

---

[2] Section 2656(b)(1) provides:

When considering the suspension or revocation of the license of a landscape architect on the grounds that the person licensed has been convicted of a crime, the Board, in evaluating the rehabilitation of such person and his or her present eligibility for a license will consider the following criteria:

(1) Nature and severity of the act(s) or offense(s).

(2) Total criminal record.

(3) The time that has elapsed since commission of the act(s) or offense(s).

(4) Whether the licensee has complied with any terms of parole, probation, restitution or any other sanctions lawfully imposed against the licensee.

(5) If applicable, evidence of expungement proceedings pursuant to Section 1203.4 of the Penal Code.

(6) Evidence, if any, of rehabilitation submitted by the licensee.

4

1 | determining whether the crime was substantially related (Counts 1, 2, 4);

2 | (2) California Business and Professions Code § 5615[3] for failing to define or otherwise

---

[3] § 5615 provides:

As used in this chapter:
"Landscape architect" means a person who holds a license to practice landscape architecture in this state under the authority of this chapter.

A person who practices landscape architecture within the meaning and intent of this article is a person who offers or performs professional services, for the purpose of landscape preservation, development and enhancement, such as consultation, investigation, reconnaissance, research, planning, design, preparation of drawings, construction documents and specifications, and responsible construction observation. Landscape preservation, development and enhancement is the dominant purpose of services provided by landscape architects. Implementation of that purpose includes: (1) the preservation and aesthetic and functional enhancement of land uses and natural land features; (2) the location and construction of aesthetically pleasing and functional approaches and settings for structures and roadways; and, (3) design for trails and pedestrian walkway systems, plantings, landscape irrigation, landscape lighting, landscape grading and landscape drainage.

Landscape architects perform professional work in planning and design of land for human use and enjoyment. Based on analyses of environmental physical and social characteristics, and economic considerations, they produce overall plans and landscape project designs for integrated land use.

The practice of a landscape architect may, for the purpose of landscape preservation, development and enhancement, include: investigation, selection, and allocation of land and water resources for appropriate uses; feasibility studies; formulation of graphic and written criteria to govern the planning and design of land construction programs; preparation review, and analysis of master plans for land use and development; production of overall site plans, landscape grading and landscape drainage plans, irrigation plans, planting plans, and construction details; specifications; cost estimates and reports for land development; collaboration in the design of roads, bridges, and structures with respect to the functional and aesthetic requirements of the areas on which they are to be placed; negotiation and arrangement for execution of land area projects; field observation and inspection of land area construction, restoration, and maintenance.

This practice shall include the location, arrangement, and design of those tangible objects and features as are incidental and necessary to the

| | |
|---|---|
| 1 | give adequate notice of places where a landscape architect typically works (Counts 1, |
| 2 | 3); |
| 3 | (3) California Business and Professions Code § 125.3 for providing no notice requirement |
| 4 | and no process by which the Board should make a reasoned determination that a |
| 5 | licensee has the ability to pay according to the standard set forth by the California |
| 6 | Supreme Court[4] (Count 5); |

Plaintiff seeks a number of declaratory orders and injunctions, as well as money damages.

## II. Procedural Background

In a detailed order screening plaintiff's original complaint, the court made several rulings that remain relevant. First, the court found that plaintiff's claims were barred by the Eleventh Amendment, because plaintiff sought retrospective relief against state officials in their official capacities (e.g., a declaration that defendants' past conduct was unconstitutional). ECF No. 17 at 13-14, adopted by ECF No. 23.

/////

---

purposes outlined herein. Nothing herein shall preclude a duly licensed landscape architect from planning the development of land areas and elements used thereon or from performing any of the services described in this section in connection with the settings, approaches, or environment for buildings, structures, or facilities, in accordance with the accepted public standards of health, safety, and welfare.

This chapter shall not empower a landscape architect, licensed under this chapter, to practice, or offer to practice, architecture or engineering in any of its various recognized branches.

[4] Section 125.3 allows an administrative board to impose the reasonable costs of an investigation and enforcement action on the subject licensee. In *Zuckerman v. State Board of Chiropractic Examiners*, the California Supreme Court noted that its precedent required an administrative board governing chiropractors, in determining whether to assess costs of disciplinary enforcement against a chiropractor, to consider the chiropractor's subjective good faith in the merits of her position, whether the chiropractor raised a colorable challenge to the proposed discipline, whether the chiropractor would be financially able to make later payments, and whether the investigation was disproportionately large in comparison to relatively innocuous misconduct. 29 Cal. 4th 32, 45 (2002) (holding that the imposition of such costs did not violate due process where: (1) the decision to impose costs was discretionary, (2) precedent required the board to consider the afore-mentioned factors, and (3) the party subjected to discipline could seek judicial review via writ of mandate).

Second, the court found that plaintiff's allegations did not show a denial of the process required by the U.S. Constitution, because his complaint and its attachments showed that he had ample notice of the hearing and an opportunity to defend himself, plaintiff had not alleged sufficiently that the incomplete accusation failed to provide adequate notice of the charges against him, the Constitution does not require that state officials provide notice of state-law remedies (here, the time period for seeking state court review), and the allegations did not show how any mailing irregularities deprived plaintiff of a meaningful opportunity to respond to the accusation. *Id.* at 19-21.

Lastly, the court rejected plaintiff's as-applied vagueness challenges to § 490(a), § 2655, and § 2656(b). *Id.* at 28-33. The court analyzed the statutes and found that plaintiff had not sufficiently alleged that they were unconstitutionally vague or overbroad as applied to him. *Id.*

As plaintiff's initial complaint did not challenge the imposition of renewal fees or costs on plaintiff, the screening order did not address plaintiff's claims regarding such.

On July 31, 2019, the court noted the substitution of Laura Zuniga for McCauley as to all claims against McCauley in his official capacity. ECF No. 70.

### III.   The Motions to Dismiss

#### a.   Legal Standard

Defendants seek dismissal of plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6).[5] A complaint may be dismissed under that rule for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss for failure to state a claim, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility

---

[5] Morazzini additionally seeks dismissal for lack of Article III standing – a jurisdictional challenge under Federal Rule of Civil Procedure 12(b)(1). A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may either attack the allegations of the complaint as insufficient to confer upon the court subject matter jurisdiction, or attack the existence of subject matter jurisdiction in fact. *Thornhill Publ'g Co. v. Gen, Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). When, as here, the motion attacks the allegations of the complaint as insufficient to confer subject matter jurisdiction, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party, as under 12(b)(6). *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996).

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility standard is not akin to a "probability requirement," but it requires more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678.

For purposes of dismissal under Rule 12(b)(6), the court generally considers only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice, and construes all well-pleaded material factual allegations in the light most favorable to the nonmoving party. *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013); *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).

Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. *Chubb Custom Ins. Co.*, 710 F.3d at 956. Dismissal also is appropriate if the complaint alleges a fact that necessarily defeats the claim. *Franklin v. Murphy*, 745 F.2d 1221, 1228-1229 (9th Cir. 1984).

Pro se pleadings are held to a less-stringent standard than those drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam). However, the Court need not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. *See Ileto v. Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003) (citing *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).

### b. Morazzini's Motion

Plaintiff alleges that Morazzini denied him due process when he failed to investigate possible mail tampering at OAH after plaintiff sent him a letter on the subject. ECF No. 30 at 40-42. According to plaintiff, he sent a certified letter to Morazzini on May 5, 2016. *Id.* at 40. In the letter, which is attached as Exhibit I to the amended complaint, plaintiff wrote of a "most recent incident of returned mail," which he described only as a letter to the ALJ who had heard his case. *Id.* at 105. Plaintiff asked Morazzini to investigate possible mail obstruction. *Id.*

Plaintiff claims that his mail to OAH began being returned to him in February 2016. *Id.* at 29-30. Among the documents returned to him was his motion for reconsideration of the ALJ's

8

denial of his motion to dismiss the accusation (in which he had argued that dismissal was warranted because the accusation had not been properly served on him). *Id.* at 30. Plaintiff believes that this denied him due process because the ALJ and/or Board did not consider the motion for reconsideration in rendering the ultimate decision to revoke his license. *Id.*

In screening plaintiff's initial complaint, the court stated:

> Nor do plaintiff's allegations that his mail was obstructed plausibly suggest that he was deprived of a meaningful opportunity to respond to the accusation. He alleges that the Board denied a motion to dismiss based on the allegedly incomplete accusation. Yet he alleges that he argued this issue before the ALJ and that she denied the motion. Thus, his own allegations indicate that he had a fair opportunity to address this issue.

ECF No. 17 at 21. Plaintiff relies heavily on the court's second screening order, issued regarding his amended complaint, in which the court found that "[f]or the limited purposes of § 1915A screening and liberally construed, the amended complaint states a potentially cognizable due process claim against defendant[] . . . Morazzini." ECF No. 34 at 2. Plaintiff believes that this statement precludes Morazzini from arguing that plaintiff has failed to state a claim against him. ECF No. 63 at 6-7. Plaintiff is mistaken.

The court's second screening order stopped short of finding plaintiff's claims cognizable. Instead, the court deliberately characterized that the claims as "potentially" cognizable, and only for purposes of screening. In contrast to the first screening order, it did not perform a rigorous review of the 50-plus page amended complaint, which, in the court's words, was "complicated, redundant, and overly detailed." ECF No. 34 at 1. A screening order is often a cursory review of the complaint construed in favor of allowing the action to proceed. *Beamon v. Pollard,* No. 15-CV-560, 2016 U.S. Dist. LEXIS 60505, at *2-3 (E.D. Wis. May 6, 2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). It issues without the benefit of a defendant's response, and once a defendant presents his arguments, the court must review them. *See id.* Otherwise, § 1915A would render Rule 12(b)(6) obsolete in prisoner actions and would deprive defendants of an opportunity to present their arguments on the sufficiency of the complaint. The screening order did not preclude defendants from presenting Rule 12(b)(6) motions.

/////

Morazzini argues in his motion that plaintiff has not alleged an injury caused by Morazzini. ECF No. 51 at 10-13. Morazzini provides two frames for this argument: Article III standing and proximate causation. *Id.* The court need not address many facets of these arguments because one very simple argument presented by Morazzini justifies dismissal of the claim against him – OAH was not the proper place to send the motion for reconsideration. Under California law, the motion should have been addressed to the agency, who could then opt to refer it to an ALJ. Cal. Gov't Code § 11521. Thus, even if the agency did not consider the motion for reconsideration and this failure deprived plaintiff of due process (which the court does not decide), this deprivation was not traceable to Morazzini's decision not to respond to plaintiff's letter. *Scalia v. Cty. of Kern*, 308 F. Supp. 3d 1064, 1072 (E.D. Cal. 2018) ("Section 1983 requires that there be an actual connection or link between the actions of Defendants and the constitutional deprivations alleged to have been suffered by Plaintiff.").

Moreover, just as in the initial complaint, plaintiff's allegations make clear that he *was* able to raise the issue of defective service with the ALJ, who considered and rejected his arguments. ECF No. 30 at 37-38. As the court stated in its initial screening order, the allegations do not plausibly suggest that any mail irregularities at OAH deprived him of a meaningful hearing on the service issue. Accordingly, the claims against Morazzini must be dismissed. Because plaintiff has had two opportunities to state a viable claim against Morazzini, and because it appears that no amendment could save the claim, the dismissal should be without leave to amend. *Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir. 2000) (dismissal without leave to amend is appropriate where the pleading could not possibly be cured by the allegation of other facts).

### c. **McKinney's and McCauley's Motion**[6]

McCauley argues that all claims brought against him in his official capacity must be dismissed because he is no longer the executive officer of the LATC. ECF No. 52 at 10.

---

[6] Defendants request judicial notice of plaintiff's writ filing in Sacramento Superior Court and that court's ruling on the writ. ECF No. 52. Plaintiff opposes the request. ECF No. 64 at 22-26. Plaintiff argues that the documents are not authenticated but does not argue that they are not authentic. He also argues that the documents do not support defendants' claims of collateral estoppel. However, judicial notice of these court records is appropriate under Federal Rule of Evidence 201, and the request is therefore granted.

However, these claims are not extinguished simply because McCauley has left office. Instead, they continue by operation of Federal Rule of Civil Procedure 25(d) against McCauley's successor in office, Zuniga, who has been substituted into the action as to those claims. ECF No. 70. Accordingly, the official capacity claims may not be dismissed by reason of McCauley's departure but will continue against defendant Zuniga. As defendants have presented no further arguments for dismissal of these claims, the motion to dismiss plaintiff's official capacity claims against the executive officer of the LATC (now Zuniga) must be denied.

Defendant McKinney urges the court to dismiss the claims against him contained in Count 6 of the complaint. There, plaintiff alleges that the Board's imposition of an order to pay costs of enforcement against him violated his due process rights for various reasons. The court agrees with McKinney that the complaint does not contain facts showing his involvement in the decision to impose costs, and thus, to the extent plaintiff alleges a claim against McKinney based on that decision, such claim must be dismissed. *James v. Rowlands*, 606 F.3d 646, 653 n.3 (9th Cir. 2010) ("Of course, § 1983 imposes liability on a defendant only if he or she personally participated in or directed a violation."). The dismissal should be without prejudice to allow plaintiff an opportunity to include facts showing McKinney's involvement in an amended complaint, if such facts exist.

Plaintiff also alleges in Count 6 that McKinney deprived him of due process when he failed to provide him notice of the time to file an administrative writ in state court under California Government Code § 11523 and California Code of Civil Procedure § 1094.5. The court reviewed and rejected this claim when plaintiff raised it in his initial complaint, because "procedural due process does not require notice of state-law remedies." ECF No. 17 at 22. The court noted that, although the claim appeared to be futile, it would give plaintiff an opportunity to try to cure the claim. Plaintiff's amended complaint does not provide any new facts which, if credited, would show that McKinney deprived plaintiff of the process required by the U.S. Constitution by failing to provide notice of the time period for seeking state court review. Because plaintiff has had an opportunity to save the claim and it appears he cannot do so, this claim should be dismissed without leave to amend.

Plaintiff reiterates in Count 7 that McCauley and McKinney deprived him of due process when McKinney did not provide him notice of the § 11523 timeframe. This claim fails for the same reason as the claim against McKinney in Count 6, and must be dismissed without leave to amend.

Plaintiff presents other allegations in Count 6 regarding McKinney's rejection of his petition for reconsideration as untimely, and McCauley's alleged failure to correct that "mistake." ECF No. 30 at 25-27. Defendants do not address these allegations in their motion to dismiss, and thus the court has no cause to dismiss them at this time.

McKinney and McCauley seek dismissal of plaintiff's claim that they deprived him of due process by imposing on him a $400 license renewal fee, plus a $200 late charge, without providing him with a hearing regarding his ability to pay the fee. According to defendants, they were not obligated to provide a hearing on plaintiff's ability to pay, although they provide no legal citations or reasoning supporting this position. ECF No. 52 at 12. However, the allegations of the complaint and the documents attached thereto show that plaintiff did not actually pay any fees at all, and that his license was revoked due to his child pornography conviction, not a failure to pay fees. The complaint lacks facts showing that plaintiff was deprived of a constitutionally protected interest when McKinney informed plaintiff that he would have to pay the fees, because the intervening revocation of plaintiff's license obviated any requirement that he pay the fees. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (explaining that the Due Process Clause requires certain procedures before an individual is deprived of life, liberty, or property). Thus, plaintiff's claims regarding the license and late fees should be dismissed with leave to amend to allow plaintiff an opportunity to present facts showing that he was deprived of a protected interest by McKinney's letter (or otherwise) regarding the license and late fees.

McKinney seeks dismissal of plaintiff's claim against him that he was not provided with adequate notice and a timely hearing on the revocation of his license. According to McKinney, the amended complaint lacks facts showing his involvement in serving the notice of the accusation or setting the hearing. The court agrees. While plaintiff provides facts on this matter in his opposition brief, the facts do not appear in the amended complaint. This claim should be

dismissed with leave to amend to allow plaintiff an opportunity to state facts showing McKinney's involvement in the service of notice or the timing of the hearing.

McCauley also seeks dismissal of plaintiff's claim against him in his individual capacity that he deprived plaintiff of adequate notice and a timely hearing. McCauley argues that plaintiff is bound by the ALJ's determination that notice was proper and that the claim is otherwise barred because plaintiff could have raised it in his state writ proceeding. Perhaps so, but McCauley has provided the court with no argument or authority supporting these assertions, and the court declines to perform this work on his behalf. Nevertheless, as with McKinney, the amended complaint lacks facts showing McCauley's personal involvement in or responsibility for serving the accusation or setting the hearing. Accordingly, the claim should be dismissed with leave to amend.

The court notes for the sake of clarity that defendants' motions to dismiss do not address many claims and that these claims await further adjudication.

### IV.     Conclusion and Recommendation

For the foregoing reasons, it is hereby RECOMMENDED that:

1. Defendant Morazzini's March 29, 2019 motion to dismiss (ECF No. 51) be granted without leave to amend;
2. The March 29, 2019 motion to dismiss brought by defendants McCauley and McKinney (ECF No. 52) be granted in part as follows and otherwise denied:
   a. Plaintiff's claim that defendant McKinney, in his individual capacity, deprived him of due process by imposing costs of enforcement on him be dismissed with leave to amend;
   b. Plaintiff's claim that defendants McKinney and McCauley, in their individual capacities, deprived plaintiff of due process by not providing notice of the time limit for filing a state court administrative writ be dismissed without leave to amend;
   c. Plaintiff's claim that defendants McKinney and McCauley, in their individual capacities, deprived him of due process by imposing a license renewal fee and

1  a late fee on him without providing adequate process be dismissed with leave
2  to amend;
3      d. Plaintiff's claim that defendants McKinney and McCauley, in their individual
4  capacities, deprived plaintiff of due process by providing inadequate notice and
5  an untimely hearing on the revocation of his license be dismissed with leave to
6  amend.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 28, 2019.

                      EDMUND F. BRENNAN
                      UNITED STATES MAGISTRATE JUDGE